1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
kevin@kjclawgroup.com
W. Blair Castle (SBN 354085)
blair@kjclawgroup.com
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

Attorneys for Plaintiff
*Bruce Gray*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE GRAY, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE CLEAN SUPPS LLC d/b/a INNO SUPPS, a Delaware limited liability company; and DOES 1 to 10, inclusive,<br><br>　　　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>Filed Concurrently:<br><br>　1. Plaintiff's CLRA Venue Affidavit<br><br>***(Jury Trial Demanded)*** |

Plaintiff Bruce Gray ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## INTRODUCTION AND SUMMARY OF CLAIMS

1. Plaintiff brings this Class Action Complaint to challenge both the automatic renewal subscription practices and fake discount practices of Defendant The Clean Supps LLC d/b/a Inno Supps ("Inno Supps").

2. In short, Inno Supps's automatic renewal and continuous service offers violate California's Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires companies like Inno Supps to clearly and conspicuously explain "automatic renewal offer terms," which Inno Supps failed to do.

3. As a result of these ARL violations, Inno Supps has violated the California Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750, *et seq. See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 870 (N.D. Cal. 2019) (an ARL violation can form the basis for a CLRA claim); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676–77 (9th Cir. 2018) ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription. The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

4. In addition, because Inno Supps automatic renewal "business practices" violate the ARL, they also violate California Business & Professions Code §§ 17200 (the "UCL"). *See, e.g., Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) (explaining that the "unlawful" prong of § 17200 makes a violation of the underlying law a *per se* violation of the UCL; stating, "The UCL's scope is broad. By defining unfair competition to include any '*unlawful* . . . business act or practice,' the UCL permits violations of other laws to be

treated as unfair competition that is independently actionable.") (emphasis in original); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 561 (1998), *overruled on other grounds in Arias v. Superior Court*, 46 Cal.4th 969 (2009) (holding that § 17200 allows a remedy even if the underlying statute confers no private right of action). California law is clear that virtually any law or regulation—here, the ARL—can serve as a predicate for a § 17200 "unlawful" violation. *See People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 319 (1980); *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992) (holding that § 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200).

5.    Additionally, this class action also aims to hold Inno Supps liable for its unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on nearly every product sold through its website. This practice of false reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deeply "discounted" price. The result is a sham price disparity that misleads consumers into believing they are receiving a good deal, thereby inducing them into making a purchase. Companies like Inno Supps drastically benefit from employing a false reference pricing scheme and experience increased sales.

6.    The California legislature prohibits this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers, including Inno Supps, have an incentive to lie to customers and advertise false sales. The resulting harm is tangible—the bargain hunter's expectations about the product he or she purchased is that it has a higher perceived value, and she may not have purchased the product but for the false savings.

7.    The advertised discounts are fictitious because the reference price does not represent a bona fide price at which Inno Supps previously sold a substantial quantity of the merchandise for a reasonable period of time (or at all) as required by the Federal Trade

Commission ("FTC"). In addition, the represented reference price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price, as required by California law. The deception is magnified for these products because the representation of the false reference price leads consumers like Plaintiff to believe they are purchasing a product of substantially higher quality and that they are purchasing a product that was previously offered for sale at the significantly higher reference price.

8.     Through its false and misleading marketing, advertising, and pricing scheme, Inno Supps violated and continues to violate California law, which prohibits (1) advertising goods for sale as discounted from former prices that are false, and (2) misleading statements about the existence and amount of price reductions. Specifically, Inno Supps violated and continues to violate: the UCL; the CLRA; California's False Advertising Law, Business & Professions Code §§ 17500, et seq. (the "FAL"); and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45, 52.

9.     Plaintiff, on behalf of himself and the Classes (defined below), seeks to obtain actual damages, injunctive relief, restitution, punitive damages, and other appropriate relief as a result of these violations.

10.     Plaintiff also seeks reasonable attorneys' fees pursuant to both (1) the CLRA, which allows a prevailing plaintiff to recover court costs and attorneys' fees as a matter of right, *see* Cal. Civ. Code § 1780(e), and (2) Cal. Civ. Code section 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## PARTIES

11.     Plaintiff is and at all relevant times mentioned was both a resident of Los Angeles County, California and a "consumer," as defined by Cal. Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

12.     Inno Supps is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada. Inno Supps is and at all relevant times mentioned was a "person," as defined by Cal. Civ. Code § 1761(c).

13.     Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. Defendants shall together be referred to as "Defendants" or "Inno Supps."

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

15.     This Court has personal jurisdiction over Inno Supps because Inno Supps has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through its sale of subscriptions and products in California and to California consumers.

16.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff 's claims occurred in this District. Plaintiff resides in this District and purchased a product from Inno Supps in this District.

## FACTUAL ALLEGATIONS

17.     Inno Supps is an online retailer of sport supplements.

18.     On October 15, 2024, purchased "Inno Shred Inferno × 1" (the "Product") from Inno Supps' website (https://www.innosupps.com) for $43.99 (although with

shipping and taxes, his total purchase price was $53.16), from his home in Los Angeles County, California.

19.    After this initial transaction, however, Inno Supps enrolled Plaintiff into an automatic renewal subscription (i) without providing the clear and conspicuous disclosures required by California law, and (ii) by charging him an additional $53.16 on November 14, 2024.

20.    In addition, Inno Supps violated several of the CLRA's proscribed "misrepresentation" practices, because the Product was falsely advertised as being on sale.

**A.    Violations of the ARL.**

21.    Automatic renewal subscriptions affecting California consumers are governed by the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*

22.    The ARL requires companies like Inno Supps to clearly and conspicuously explain "automatic renewal offer terms," including by providing the following clear and conspicuous disclosures:

> (a) that the subscription or purchasing agreement will continue until the consumer cancels;
>
> (b) the description of the cancellation policy that applies to the offer;
>
> (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;
>
> (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and
>
> (e) the minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(b)(1) – (5).

23.    Critically, the ARL requires that the automatic renewal offer terms must be presented to the consumer both:

(a) _before_ the purchasing contract is fulfilled, and in "visual proximity" to the _request for consent to the offer_; and

(b) _clearly and conspicuously_, defined by the statute as one or more of the following:

   i.   in larger type than the surrounding text;

   ii.   in contrasting type, font, or color to the surrounding text of the same size; or

   iii.   set off from the surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language.

_See id._, §§ 17602(a)(1) & 17601(c).

24.    Inno Supp failed to provide these disclosures.

25.    As shown from the screenshot below (captured from Inno Supps' website), Inno Supps does not clearly and conspicuously disclose in visual proximity to the request for consent to the offer, among other things, the automatic renewal offer terms, that the subscription or purchasing agreement will continue until the consumer cancels, or the cancellation policy that applies to the offer:

26.     Additionally, Inno Supps must provide consumers with "an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." *Id.* at § 17602(a)(3).

27.     Instead, the acknowledgment Plaintiff received, shown below, was deficient in many respects, including because Inno Supps fails to provide the offer terms, its cancellation policy, and instructions on how to cancel a subscription.

CLASS ACTION COMPLAINT

**<u>Order confirmation email:</u>**

ORDER #2956598

## Thanks from Team Inno Supps!

We've received your order and are getting it ready to be shipped! Please allow 2-3 days for us to process your order. You will receive a shipping notification via email when it has shipped.

Learn how to take your samples here: 'Samples Guide'

Thank you for your patience and we hope you enjoy our supplements! Our Customer Care Team is on standby if you have any questions regarding your order.

- Team Inno Supps

View your order        or Visit our store

## Order summary



Inno Shred Inferno × 1
Delivery every 30 Days for $43.99

$43.99

CLASS ACTION COMPLAINT

**Subscription confirmation email:**



28.   Inno Supps also failed provide a means to cancel subscriptions by using a "cost-effective, timely, and easy-to-use mechanism for cancellation." *Id.* at § 17602(b).

29.     Where, as here, "a business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately." *Id.* at § 17602(d)(1).

30.     Moreover, to cancel, "the business shall provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings [or] (B) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." *Id.* at § 17602(d)(2).

## B.     False Discount Scheme

31.     At the same time, Inno Supps engaged in deceptive sales practices by advertising false prices and corresponding "discounts" on its products sold online.

32.     Unfortunately for consumers, the business model of Inno Supps heavily relies on deceiving customers with fake sales. On a typical day, Inno Supps prominently displays on its website some form of sale where all products or a select grouping of products are supposedly marked down. All or nearly all of the products on the Inno Supps website are represented as being significantly marked down from a substantially higher original or reference price, which is prominently displayed to the customer as being the supposed original price (the "Reference Price"), as shown below:

CLASS ACTION COMPLAINT

**September 20, 2024 Screenshot:**



33.    By doing this, Inno Supps conveys to customers that a particular product had previously sold in the recent past at the Reference Price, but is now being sold to the customer at a substantial discount.

34.    However, this Reference Price in the "sale" is almost always—if not always—a falsely inflated price because Inno Supps never sells its items at the Reference Price. Rather, the supposed regular price is merely a false reference price Inno Supps uses to deceive and induce its customers (including Plainitff) into making purchases they would not otherwise have made and to pay more for products they believe are actually on sale. This scheme is done to provide misinformation to the customer in order to make it appear as if the items have a greater value.

35.    Inno Supps' practices were done to all merchandise offered for sale on its website.

36.    Plaintiff fell victim to Inno Supps' false advertising and deceptive pricing practices. When he browsed Inno Supps' website, Plaintiff observed that nearly every item offered had a Reference Price that was crossed out and a sale price. For example, the price of the Product (purchased by Plaintiff) was listed as:

CLASS ACTION COMPLAINT

<span style="color:red">$43.99</span> ~~$64.99~~

37.    In other words, Plaintiff saw that Inno Supps represented on the product description page for the Product that it was supposedly on sale based on a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price containing a strikethrough. Plaintiff purchased the Product, but before doing so, relied on the representation that the product listed above had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price.  Plaintiff relied on Inno Supps' representation that the Product was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Inno Supps.

38.    Plaintiff paid $43.99 for the Product (although with shipping and taxes, his total purchase price was $53.16). The truth, however, is that the Product Plaintiff purchased was not substantially marked down or discounted, or at the very least, any discount he was receiving had been grossly exaggerated.  That is because the Product Plaintiff bought had never been offered on Inno Supps' website for any reasonably substantial period of time—if ever—at the full Reference Price of $64.99. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Inno Supps had not offered the Product at the Reference Price.

39.    The Reference Price was a fake price used in Inno Supps' deceptive marketing scheme, which is clear from evidence captured on the "WayBack Machine," an online tool that allows users to view screenshots of websites at particular points in time.  See https://archive.org/web/ (explaining how the WayBack Machine captures screenshots from websites created years ago, and allows users to see snapshots of websites it has navigated and archived at various time periods; the tool archives more than 150 billion web pages that have appeared since 1996, creating a digital footprint of everything that has appeared on any given website at various points in time); *see also Marten Transport, LTD v. Platform Advertising, Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (relying on the WayBack Machine as a source of competent evidence).

CLASS ACTION COMPLAINT

40.    More specifically, as shown by the WayBack Machine's screen capture of Inno Supps' website at various points in time, Inno Supps has been employing a reference price scheme on nearly every product for quite some time (i.e., falsely representing its products are heavily discounted).  For example:

**December 10, 2024 Screenshot:**



**September 20, 2024 Screenshot:**



**August 6, 2024 Screenshot:**



**April 19, 2024 Screenshot:**

CLASS ACTION COMPLAINT

**December 3, 2023 Screenshot:**



41.     Inno Supps knows that the prices are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Inno Supps thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Inno Supps was simply being truthful about their "sales."

42.     Therefore, Plaintiff would not have purchased the Product listed above, or at the very least, would not have paid as much as he did, had Inno Supps been truthful. Plaintiff was persuaded to make his purchase only because of the fake sale based on Inno Supps fake Reference Price scheme. Plaintiff is susceptible to this recurring harm because he cannot be certain that Inno Supps has corrected this deceptive pricing scheme, and he desires to shop at Inno Supp's online store in the future. Plaintiff does not have the resources on his own to determine whether Inno Supps is complying with California law with respect to its pricing practices.

43.     The effectiveness of Inno Supps's deceitful pricing scheme is backed by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098,

1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992). Therefore, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56; *see also* ¶ 22, supra (using a Reference Price to allege a savings of $11,696). For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

44.    Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." Id.

45.    In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

46.    Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance

CLASS ACTION COMPLAINT

buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

47.    The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." Id.

48.    The unmistakable inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Inno Supps is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following classes.

50.    Plaintiff represents, and is a member of, the Class consisting of:

> All persons in California who purchased a product or service from Inno Supps as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint (the "Class Period"), where the product was purchased at a discount from a higher price and who have not received a refund or credit for their purchase(s).

51.     Plaintiff also represents, and is a member of the following Subclasses (together with the Class, the "Classes"):

### The ARL Subclass

All persons in California who purchased a product or service from Inno Supps as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint (the "Class Period").

### The Former Price Class

All persons in California who purchased one or more of Inno Supps's products from the Inno Supps website within the four years prior to the filing of this Complaint (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).

52.     Excluded from the Classes are any and all past or present officers, directors, or employees of Inno Supps, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

53.     There is a well-defined community of interest in the litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representative of the Classes.

54.     *Numerosity*: The Classes are so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Classes.  The precise number of Class members is unknown to Plaintiff.

55.     *Typicality*. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint. All Class members have been deceived (or were likely to be

deceived) by Inno Supps's false and deceptive price advertising scheme, as alleged in this Complaint. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class Members

56. ***Adequacy of Representation***. Plaintiff is an adequate representative of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

57. ***Existence and Predominance of Common Questions of Law or Fact***. Common questions of law and fact exist as to all members of the Classes that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary among members of the Classes, and which may be determined without reference to the individual circumstances of any member of the Classes, include, but are not limited to, the following:

(a) Do Inno Supps's automatic renewal practices violate the ARL, Cal. Bus & Prof. Code §§ 17600, *et seq.*?

(b) Has Inno Supps violated the CLRA, Cal. Civ. Code §§ 1750, *et seq*.?

(c) Has Inno Supps violated the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*?

(d) Whether the members of the Classes are entitled to damages and/or restitution.

(e) What type of injunctive relief is appropriate and necessary to enjoin Inno Supps from continuing its unlawful automatic renewal practices?

(f) Whether, during the Class Period, Defendants advertised price discounts from false Reference Prices on products offered on their website.

(g) Whether the products listed on Defendants' website during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(h) Does Defendants' deceptive pricing scheme using false Reference Prices

CLASS ACTION COMPLAINT

constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

(i) Does Defendants' deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

(j) Does Defendants' deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code §§ 17500, *et seq*.?

(k) Whether Defendants' false Reference Prices on products offered on their website during the Class Period are false representations.

(l) Whether and when Defendants learned that false Reference Prices on products offered on their website during the Class Period are false representations.

(m)    Whether Defendants had a duty to disclose to their customers that the Reference prices were fake "original" prices in furtherance of sham sales.

(n) To what extent did Defendants' conduct cause, and continue to cause, harm to the Class?

(o) Whether the members of the Class are entitled to damages and/or restitution.

(p) What type of injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising?

58.    ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Classes could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or

contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

59.    By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

60.    *Ascertainability*. Upon information and belief, Defendant keeps extensive computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Classes may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## FIRST CAUSE OF ACTION

### Violation of the California Consumer Legal Remedies Act (ARL),

### Cal. Civ. Code §§ 1750, *et seq*.

### (By Plaintiff Against Defendants on Behalf of the Class and the ARL Subclass)

61.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph.

62.    The CLRA is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or

lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

63.    California enacted the ARL "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

64.    Plaintiff and each member of the Class and ARL Subclass are "consumers" as defined by California Business & Professions Code section 17601(d). Inno Supps's sales of its products on its website to Plaintiff and the Class and ARL Subclass were for an "automatic renewal" within the meaning of California Business & Professions Code section 17601(a).

65.    Defendants failed to clearly and conspicuously disclose (a) the nature of the subscription agreement as one that will continue until the consumer canceled, (b) how to cancel the subscription, (c) the recurring amounts that would be charged to the consumer's payment account, (d) the length of the automatic renewal term, or (e) any minimum purchasing obligation(s).

66.    Defendants failed to provide a "cost-effective, timely, and easy-to-use mechanism for cancellation" whereby consumers can "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."

67.    Through their violations of the ARL, Defendants have violated the CLRA. *See King*, 393 F.Supp.3d at 870 (an ARL violation can form the basis for a CLRA claim); *see also Pluralsight*, 728 F. App'x at 676–77 ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription. The record also indicates that consumers signing up for trial

subscriptions were not specifically given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

68.    Pursuant to Cal. Civ. Code § 1782, on November 25, 2024, Plaintiff's counsel notified Defendants in writing (by certified mail, with return receipt requested) of the particular violations of the CLRA and demanded that they correct or agree to correct the actions described in this Complaint, including by giving notice to all affected consumers.

69.    Defendants did not agree to rectify the problems associated with the actions described above and to give notice to all affected consumers within 30 days of the date of the written notice, as prescribed by § 1782.

70.    Plaintiff seeks actual, consequential, punitive, and statutory damages, as well as mandatory attorneys' fees and costs, against Defendants.

## SECOND CAUSE OF ACTION

**Violation of the Unfair Competition Law (ARL) (Bus. & Prof. Code, §§ 17200)**

**(By Plaintiff Against Defendants on Behalf of the Class and ARL Subclass)**

71.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph.

72.    The UCL prohibits, and provides civil remedies for, "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." The UCL is written in "sweeping language" to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992) (internal brackets and quotation marks omitted).

73.    The UCL has several substantive "prongs" which are a function of the statutory definition of "unfair competition."  More specifically, under the UCL, "unfair competition" includes (i) an "unlawful" business act or practice, (ii) an "unfair" business act or practice, and (iii) a "fraudulent" business act or practice.  *See* Bus. & Prof. Code, §§ 17200, *et seq.*

74.     The "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of the UCL.  "By defining unfair competition to include any '*unlawful . . .* business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable."  *Kasky*, 27 Cal.4th at 950 (emphasis in original).

75.     Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, among other things: (a) enrolling Plaintiff and the Class in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charging Plaintiff and the Class for those services without obtaining the requisite affirmative consent; (c) failing to provide Plaintiff or the Class with information on how to cancel those services; (d) failing to provide Plaintiff or the Class with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failing to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3).  Plaintiff reserves the right to allege other violations of law that constitute unlawful, unfair, or fraudulent business acts or practices.

76.     Defendants' acts and omissions as alleged in this Complaint violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

77.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described in this Complaint.

78.     Defendants' acts, omissions, nondisclosures, and misleading statements as alleged in this Complaint were and are false, misleading, and/or likely to deceive the consuming public.

79.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

CLASS ACTION COMPLAINT

80.    Pursuant to § 17203, Plaintiff and all Class members are entitled to restitution of all amounts Defendants received from them as a result of the foregoing conduct during the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

81.    Pursuant to § 17203, Plaintiff is entitled to an order enjoining Defendants from committing further acts of unfair competition. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

### THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law (Former Price),**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Himself and the Class and Former Price Subclass)**

82.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

83.    California Business and Professions Code §§ 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

84.    The UCL imposes strict liability. Plaintiff need not prove that Inno Supps intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices— but only that such practices occurred.

**"Unlawful" Actions**

85.    A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL. The violation of any law constitutes an "unlawful" business practice under the UCL.

86.    Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

87.    The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendants, are deceptive practices that would violate the FTCA:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. ***If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. §§ 233.1(a) (emphasis added).

88.    Further, as detailed below in the Second Claim for Relief, Defendants' conduct also violates California's false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement,

concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

89.     California law also expressly prohibits false former pricing schemes like the one employed by Defendants. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

90.     Moreover, as detailed below in the Third Claim for Relief, Defendants' conduct also violates the California Consumer Legal Remedies Act ("CLRA"). See Cal. Civ. Code §§ 1750, et seq. More specifically, Defendants violated the CLRA's provisions prohibiting businesses from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code § 1770(a)(13).

**"Unfair" Actions**

91.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

92.     Here, Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely

CLASS ACTION COMPLAINT

advertising and representing markdowns or "discounts" that were false and inflated. Defendants' deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were. Defendants' acts and practices therefore offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

93.    The harm to Plaintiff and members of the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described in this Complaint.

**"Fraudulent" Actions**

94.    A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

95.    Here, members of the public are likely to be deceived by Defendants' conduct as alleged above. Among other things, Defendants affirmatively misrepresented the Reference Prices of their products, which thereby misled and deceived customers into believing that they were buying merchandise from Defendants at substantially marked-down and discounted prices. Defendants' deceptive marketing practice gave consumers the false impression that their products were regularly sold on the market for a substantially higher price in the recent past than they actually were and led to the false impression that Defendants' products were worth more than they actually were.

96.    In addition, Defendants had a duty to disclose the truth about their pricing deception, including, among other things, that the Reference Prices advertised and published on their website were not, in fact, prices at which Inno Supps's products had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendants' products rarely (if ever) were offered at the advertised Reference Prices. Defendants, however, concealed this material information from customers and the

general public. Members of the public, therefore, were also likely to be deceived by Defendants' failure to disclose material information.

97.    Because Defendants communicated the same misrepresentation to all class members—that Inno Supps products were previously sold at various Reference Prices—the class is entitled to an inference of reliance. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024).

98.    Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendants' unlawful, unfair, and/or fraudulent business practices, and as a result of Defendants' unfair, deceptive, untrue or misleading advertising.

99.    Plaintiff, on behalf of herself and the members of the Class, seeks disgorgement of all moneys received by Defendants through the conduct described above.

100.    Plaintiff, on behalf of herself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendants from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false Reference Prices in connection with their sale of Inno Supps products on their website.

101.    Injunctive relief is necessary to prevent future harm to consumers, including Plaintiff, who would like to purchase the products in the future. Every day, consumers like Plaintiff are misled into believing they are receiving a discount. Without injunctive relief, Defendants will continue to mislead consumers, and consumers will purchase products they otherwise would not have purchased because they will be unable to determine whether they are actually receiving a discount.

## FOURTH CAUSE OF ACTION

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Himself and the Class and Former Price Subclass)**

102.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

103.   The California False Advertising Law, codified at California Business & Professions Code sections 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

104.   Similarly, the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

105.   Here, Defendants routinely disseminated on their website false Reference Prices for the products offered for sale on their website, including to Plaintiff. Such statements of Defendants were untrue, or at the very least, were misleading. Among other things, Defendants rarely, if ever, offered Inno Supps's products on their website at the Reference Prices displayed in connection with their products. Further, Defendants rarely, if ever, offered Inno Supps's products on their website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices. Defendants therefore misled customers, including Plaintiff, into believing that the Reference Prices are, or were, genuine former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendants' deceptive marketing practice gave consumers the false impression that their products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.

106.   Defendants engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase sales of Inno Supps's products offered by Defendants on their website and retail locations.

107.   Defendants knew, or by the exercise of reasonable care should have known, that their dissemination of Reference Prices for Inno Supps products sold on their website was untrue and/or misleading. Among other things, Defendants represented the Reference Prices in connection with Inno Supps products sold on their website even though they knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

108.   As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all members of the Class, and to enjoin Defendants from continuing their false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## FIFTH CAUSE OF ACTION

**Violation of the California Consumer Legal Remedies Act (Former Price)**

**(By Plaintiff Against Defendants on Behalf of the Class and Former Price Class)**

109.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph.

110.   Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendants' sale of Inno Supps products on their website to Plaintiff and the Class and the Former Price Subclass were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class and Former Price Subclass are "goods" within the meaning of California Civil Code section 1761(a).

111.   Defendants violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class and Former Price Subclass which were intended to result in, and did result in, the sale of Inno Supps-branded products: (a) advertising goods or services with the intent not to sell them as advertised; and (b) making false or misleading statements of fact concerning reasons for, the existence of, or amounts of price reductions. Cal. Civ. Code §§ 1770(a)(9) & (13).

112.   With regards to section 1770(a)(9), Defendants advertised and represented their branded products on their website with the "intent not to sell" them as advertised because, among other things the false Reference Prices advertised in connection with products offered on their website misled and continue to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher Reference Prices for some reasonably substantial period of time.

113.   With regards to section 1770(a)(13), Defendants made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things no true price reductions existed—or at the very least, any price reductions were exaggerated—in that Defendants' products were rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time.

114.   Pursuant to Cal. Civ. Code § 1782, on November 25, 2024, Plaintiff's counsel notified Defendants in writing (by certified mail, with return receipt requested) of these particular violations of the CLRA and demanded that they correct or agree to correct the actions described in this Complaint, including by giving notice to all affected consumers.

115.   Defendants did not agree to rectify the problems associated with the actions described above and to give notice to all affected consumers within 30 days of the date of the written notice, as prescribed by § 1782. Therefore, Plaintiff further seeks claims for actual, consequential, punitive, and statutory damages, as well as mandatory attorneys' fees and costs, against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment in favor of himself and the Classes as follows:

### **On the First Cause of Action for Violation of the California Consumer Legal Remedies Act (ARL), Cal. Civ. Code §§ 1750, *et seq*.**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and refrain from automatically charging consumers without properly informing them in the future.

C.    For an order awarding Plaintiff and the proposed Class members actual, consequential, restitution, punitive, and statutory damages, as appropriate.

D.    For pre- and post-judgment interest and costs of suit incurred herein.

E.    For attorneys' fees incurred herein.

F.    For such other and further relief as the Court may deem just and proper.

### **On the Second Cause of Action for Violation of the Unfair Competition Law (ARL) (Bus. & Prof. Code, §§ 17200, et seq.)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and refrain from automatically charging consumers without properly informing them in the future.

C.    For an order awarding Plaintiff and the proposed Class members actual, consequential, restitution, punitive, and statutory damages, as appropriate.

D.    For pre- and post-judgment interest and costs of suit incurred herein.

E.    For attorneys' fees incurred herein.

CLASS ACTION COMPLAINT

F.     For such other and further relief as the Court may deem just and proper.

**On the Third Cause of Action for Violations of the Unfair Competition Law**

**(Former Price) (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an award of equitable and declaratory relief.

C.     For pre- and post-judgment interest and costs of suit incurred herein.

D.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

E.     For such other and further relief as the Court may deem just and proper.

**On the Fourth Cause of Action for Violations of the False Advertising Law (Cal.**

**Bus. & Prof. Code §§ 17500, *et seq.*)**

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

C.     For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

D.     For an award of equitable and declaratory relief.

E.     For pre- and post-judgment interest and costs of suit incurred herein.

F.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G.     For such other and further relief as the Court may deem just and proper.

## On the Fifth Cause of Action for Violations of the Consumer Legal Remedies Act (Former Price) (Cal. Civ. Code §§ 1750, *et seq.*)

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

C.     For an order awarding Plaintiff and the proposed Class members actual, consequential, restitution, punitive, and statutory damages, as appropriate.

D.     For pre- and post-judgment interest and costs of suit incurred herein.

E.     For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

F.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all counts so triable.

DATED:  February 27, 2025          **KJC LAW GROUP, A.P.C.**

                                   By:    /s/ *Kevin J. Cole*
                                   Kevin J. Cole, Esq.

                                   *Attorneys for Plaintiff*
                                   *Bruce Gray*